IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Donell Simmons, (R12863), <br><br> Petitioner, <br><br> v. <br><br> David Gomez,[1] <br><br> Respondent. | Case No. 21 C 3032 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Petitioner Donell Simmons, a state prisoner convicted of first-degree murder and aggravated battery with a firearm, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254. He argues that his appellate counsel was ineffective for failing to challenge the circuit court's denial of his motion to suppress. (Dkt. 1). For the reasons discussed below, the petition is denied, and the Court declines to issue a certificate of appealability.

## BACKGROUND

The relevant facts are drawn from the state court record (Dkt. 33) and the state appellate court opinion (Dkt. 33-1) and are presumed to be correct. 28 U.S.C. § 2254(e)(1). On June 4, 2003, Randy "Kato" Rangel, Jr. was shot and killed, and Harrison Hall and Estaban Claz were injured by gunfire in a barber shop. (State Ct. R., Ex. S, Pt. 1B at 76, Dkt. 33-20). In response to an investigative alert indicating that Petitioner was suspected of killing Rangel, Detective Keith Allen and ten other members of a tactical gang unit in the Chicago Police Department (CPD) proceeded to a residence to arrest Petitioner. *People v. Simmons*, 2020 IL App (1st) 170650, ¶ 4. After being

---

[1] Petitioner is incarcerated at Sheridan Correctional Center, where the current warden is Ryan Woods. The Clerk is directed, forthwith, to substitute Ryan Woods for David Gomez as the Respondent in this case pursuant to Fed. R. Civ. P. 25(d).

1

taken into custody, Petitioner signed a handwritten statement confessing to Rangel's shooting. *Id.* at ¶ 19. He was subsequently charged with first-degree murder and aggravated battery with a firearm along with three codefendants: Labar "Bro-Man" Spann, Martise "Shorty" Nunnery, and Marcus "Black" Ware (also known as John Coleman). *Id.* at ¶ 2.

A. **Trial court proceedings**

Petitioner moved to quash his arrest and suppress evidence obtained as a result of his arrest, contending the police lacked probable cause to arrest him without a warrant. (State Ct. R., Ex. S Pt. 1A at 5-7, Dkt. 33-19). During the suppression hearing, the State presented testimony from Sergeant Charles Daly, a CPD detective working in "Area 4 violent crime homicide" who was investigating the June 4 shootings. (State Ct. R., Ex. S Pt. 1B at 75-76, Dkt. 33-20). Sgt. Daly testified as follows in support of probable cause for Petitioner's arrest.

Sgt. Daly learned from CPD officers that a man named "Rio," who was facing unrelated charges, was cooperating with them. (*Id.* at 76; State Ct. R., Ex. S Pt 1C at 14-15, Dkt. 33-21). While wearing a wire, Rio had recorded a conversation with Nunnery, Petitioner's co-defendant, that seemingly discussed Petitioner and Nunnery's involvement in Rangel's death. (State Ct. R., Ex. S Pt. 1B at 76-81, Dkt. 33-20). Sgt. Daly listened to that recording, read the transcript of that recording, and then spoke with Rio a few days later. (*Id.* at 76-79). During their discussion, Rio confirmed his belief that Nunnery told him Petitioner shot Rangel. (*Id.* at 79-81); *People v. Simmons*, 2020 IL App (1st) 170650, ¶ 5.

On November 13, 2003, Sgt. Daly contacted Spann, Petitioner's co-defendant, who had been arrested on unrelated charges. (State Ct. R., Ex. S Pt 1C at 3-4, Dkt. 33-21). Spann told Sgt. Daly that he, Petitioner, and Nunnery drove to the barber shop after Nunnery received a phone call. (*Id.* at 5). Spann relayed that Nunnery handed Petitioner a .45 caliber handgun, Petitioner

2

exited the vehicle, they heard gunshots, and Spann fled the area. (*Id.*). Spann said Petitioner later told him that Petitioner had killed Rangel. (*Id.*).

Nunnery, Petitioner's co-defendant, was arrested on November 14, 2003, and provided a videotaped statement about Rangel's death to a CPD detective and an assistant state's attorney. (*Id.* at 7-8). According to Nunnery, he, Spann, and Petitioner went to the barber shop after Nunnery received a call from Ware stating that Rangel was inside the barber shop. (*Id.* at 8). Nunnery handed Petitioner his .45 caliber handgun, Petitioner entered the barber shop, and Nunnery heard gunshots. (*Id.*). Nunnery said Petitioner later told him that Petitioner had killed Rangel. (*Id.* at 9).

Ware, Petitioner's remaining co-defendant, was also arrested on November 14, 2003, and provided a videotaped statement regarding the shooting. (*Id.* at 10). Ware stated that he called Nunnery to inform him of Rangel's location, and Nunnery later told Ware that "they" killed Rangel. (*Id.* at 11).

Finally, Sgt. Daly testified that Darren McCline was arrested on November 19, 2003, and provided a handwritten statement about Rangel's death. (*Id.* at 11-12). McCline said Petitioner told him that Petitioner killed Rangel because Petitioner was hired to do so. (*Id.* at 12).

Detective Allen, one of the members of the tactical gang unit who arrested Petitioner on November 22, also testified at the suppression hearing. (State Ct. R., Ex. S, Pt. 1B at 67-73, Dkt. 33-20). Detective Allen confirmed that he and the arresting officers, who were in plain clothes and unmarked vehicles, acted pursuant to an investigative alert, did not have a search or arrest warrant for Petitioner, and saw Petitioner in handcuffs, not violating any laws, when they entered the residence. (*Id.* at 69-71). Furthermore, that investigative alert listed Detective Willliam Ruck in Area 4 as the contact person. (State Ct. R., Ex. S Pt. 4 at 126, Dkt. 33-24).

3

The circuit court denied Petitioner's motion to suppress, finding "more than sufficient, almost overwhelming probable cause" to arrest Petitioner. (State Ct. R., Ex. S Pt 2 at 10-11, Dkt. 33-22). Petitioner's confession was thus admitted at trial. After a severed bench trial, Petitioner was convicted of first-degree murder and aggravated battery with a firearm and sentenced to 47 years and 6 years, respectively, to be served consecutively. *People v. Simmons*, 2020 IL App (1st) 170650, ¶ 2, 19, 21.

**B.** **Direct appeal**

Petitioner appealed, arguing that his jury waiver was invalid, but the appellate court affirmed. *Id.* at ¶ 22. Petitioner then filed a petition for leave to appeal, which was denied by the Illinois Supreme Court. (State Ct. R., Ex. J, I, Dkts. 33-10, 33-9). Subsequently, the United States Supreme Court denied his petition for a writ of certiorari. (State Ct. R., Ex. U, Dkt. 33-27).

**C.** **Post-conviction proceedings**

Petitioner filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure, which the circuit court dismissed, and he appealed. *People v. Simmons*, 2020 IL App (1st) 170650, ¶ 23. Petitioner filed a motion to reconsider the denial of his section 2-1401 petition, which was denied and he subsequently appealed. *Id.* Both appeals were dismissed by the appellate court. *Id.* Petitioner then filed a postconviction petition in the circuit court, which the state moved to dismiss pursuant to the Post-Conviction Hearing Act. *Id.* at ¶ 1. The circuit court granted the State's motion, finding, among other things, that Petitioner's ineffective assistance claim regarding probable cause was meritless. *Id.* at ¶ 31.

Petitioner appealed, arguing that "he made a substantial showing that he is actually innocent of the crimes for which he was convicted, his trial counsel was ineffective for failing to investigate and present an eyewitness, and his appellate counsel was ineffective for failing to argue

4

that the circuit court erred in denying his motion to suppress." *Id.* The appellate court affirmed in part and reversed in part, remanding for an evidentiary hearing only on the claim that counsel was ineffective in failing to investigate and present an eyewitness. *Id.* at ¶ 65. The appellate court affirmed the circuit court on probable cause for the arrest. *Id.* at ¶¶ 57-65. Petitioner filed a petition for leave to appeal, which the Illinois Supreme Court denied. (State Ct. R., Ex. O, Dkt. 33-15).

### D. Federal Habeas Corpus Proceedings

Petitioner filed the instant petition on June 7, 2021 (Dkt. 1), which was originally dismissed without prejudice to reinstating the case within the statute of limitations and after exhausting post-conviction remedies in state court (Dkt. 12). The petition was reinstated on August 15, 2022 (Dkt. 18), at which time Petitioner was given an opportunity to assert all claims he intended to bring. Petitioner stood on his original claim of ineffective assistance of counsel for failing to appeal the denied suppression motion (Dkt. 23). This matter is fully briefed and ripe for ruling.

## LEGAL STANDARD

When a state court has adjudicated a claim on the merits in state court, a federal court may not grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Unreasonable application of clearly established law occurs if a state court identifies the correct legal rule, yet applies it in an objectively unreasonable manner," which "requires that the state court do more than just get it wrong." *Hicks v. Hepp*, 871 F.3d 513, 524 (7th Cir. 2017). On the contrary, to demonstrate an unreasonable application of clearly established law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was

5

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Section 2254(d) is "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Id.* As a result, state court decisions adjudicating the merits of a petitioner's claim are afforded deference, establishing a high burden for a petitioner to overcome before any relief may be granted. *Hicks*, 871 F.3d at 524. *See also Harper v. Brown*, 865 F.3d 857, 860 (7th Cir. 2017) (describing the § 2254(d) standard as "demanding").

The Constitution guarantees criminal defendants a right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Counsel is ineffective when (1) the representation falls below an objective standard of reasonableness, (the performance prong) and (2) prejudice results from that representation (the prejudice prong). *Id.* at 688, 692. The *Strickland* standard applies to both trial and appellate counsel alike. *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). Because both prongs must be met, either may be analyzed first. *Strickland*, 466 U.S. at 697.

A petitioner who alleges ineffective assistance of counsel faces an even more stringent standard as "[t]he Supreme Court has instructed that under these circumstances, [the reviewing court] must employ a 'doubly deferential' standard, one which 'gives both the state court and the defense attorney the benefit of the doubt.'" *Hicks*, 871 F.3d at 526 (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011))). *See also Harrington*, 562 U.S. at 105 (citations omitted) ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly

so.'"). Of note is that this Court, in adjudicating a petition for a writ of habeas corpus, is not to review whether a petitioner's appellate counsel *was* effective, but whether the state appellate court was reasonable in its application of the federal law. *See id.* at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.").

## DISCUSSION

Petitioner pursues only one claim for federal habeas relief—ineffective assistance of appellate counsel for not challenging the circuit court's denial of his suppression motion. Since the state appellate court adjudicated Petitioner's claim on the merits, that decision is reviewable by this Court pursuant to § 2254(d). Upon careful consideration of the arguments presented and the state court record, the Court finds that the state appellate court reasonably applied clearly established federal law and thus the petition must be denied.

### I. Prejudice Prong

Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Thus, the Court begins by determining whether the state appellate court reasonably determined that Petitioner's Fourth Amendment claim

7

lacked merit. If so, Petitioner could not have been prejudiced by appellate counsel's failure to raise the argument on direct appeal.

### A. Probable Cause

Petitioner contends the police lacked probable cause to effectuate his arrest. The Fourth Amendment guarantees the right of the people to be secure in their persons against unreasonable searches and seizures and provides that probable cause is required for a warrant. "Probable cause involves a practical, common sense determination about whether, given all the circumstances present, it is reasonably probable that a person has committed or is committing an offense." *United States v. Valencia*, 913 F.2d 378, 382 (7th Cir. 1990).

Respondent's answer points out that Petitioner does not appear to argue that there was no probable cause for Sgt. Daly to arrest him. (Resp. Answer at 14, Dkt. 23). Petitioner, however, reiterates in his reply brief that at the suppression hearing there was no testimony from whoever issued the investigative alert and, specifically, no testimony from Sgt. Daly that he explicitly told any other officer what he knew about the investigation or that he and Detective Ruck worked together. (Pet. Reply at 2-4, Dkt. 37). Petitioner's argument essentially goes to the application of the collective knowledge doctrine, which is discussed further below. But for the sake of completeness, the Court notes that Sgt. Daly *himself* had probable cause to arrest Petitioner. The state appellate court agreed with the circuit court's probable cause finding. *People v. Simmons*, 2020 IL App (1st) 170650, ¶ 57. That conclusion is reasonable and wholly supported by Sgt. Daly's testimony at the suppression hearing that during his investigation, he received information from multiple sources implicating Petitioner in Rangel's shooting. As such, Sgt. Daly possessed sufficient information to justify arresting Petitioner.

8

### B. Collective Knowledge Doctrine

The Court must now determine whether it was reasonable to impute the knowledge establishing probable cause from Sgt. Daly to the arresting officers. The collective knowledge doctrine instructs that it was.

"The collective knowledge doctrine permits an officer to . . . arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action. [] There is no Fourth Amendment violation if the knowledge of the officer directing the . . . arrest—or the collective knowledge of the agency for which he works—is sufficient to constitute probable cause." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010). *See also United States v. Nafzger*, 974 F.2d 906, 911 (7th Cir. 1992) ("The Fourth Amendment rights of the defendant are adequately protected by the requirement that the officers issuing the order or request have an adequate basis for doing so, such that if they were present at the scene, they could justifiably stop or arrest the suspect."). Three requirements must be met for the collective knowledge doctrine to apply: "(1) the officer taking the action must act in objective reliance on the information received, (2) the officer providing the information—or the agency for which he works—must have facts supporting the level of suspicion required, and (3) the stop must be no more intrusive than would have been permissible for the officer requesting it." *Williams*, 627 F.3d at 252-53. At its core, the collective knowledge doctrine embodies the reality that a police department involves a team of officers who work together.

The Court finds that the state appellate court reasonably determined that Detective Allen and the other arresting officers possessed probable cause to arrest Petitioner under the collective knowledge doctrine. Sgt. Daly was assigned to "Area 4's violent crime homicide" and to

investigate the June 4 shootings. True, the record is silent as to who actually issued the investigative alert or why "WILLIAM RUCK UNIT 640 DET DIV AREA 4" is listed as the contact person. (State Ct. R., Ex. S Pt. 4 at 126, Dkt. 33-24). Petitioner contends that Detective Ruck did not expressly testify to working with Sgt. Daly or issuing the investigative alert. (Pet. Reply at 2-3). But Petitioner attached Detective Ruck's testimony indicating that he was assigned to Area 4 Homicide Gang section and was investigating Rangel's murder. (*Id.* at 18-19). Given that both Sgt. Daly and Detective Ruck worked in the same police department (Area 4) and on the same investigation, knowledge is presumed to be imputed between them. *See Nafzger*, 974 F.2d at 915.

Petitioner takes issues with the appellate court's finding that "given the sheer amount of information uncovered by Daly as part of his investigation, we believe that it was not unreasonable for the circuit court to infer that Daly was responsible for the investigative alert." (Pet. Mem. of Law at 33-35, Dkt. 17; *People v. Simmons*, 2020 IL App (1st) 170650, ¶ 61). However, such an inference merely embraces the doctrine of collective knowledge as discussed herein. In other words, it does not matter whether, despite being listed as the contact person, Detective Ruck also issued the investigative alert. What controls is the collective knowledge of the police agency, of which Sgt. Daly, who possessed the knowledge sufficient to establish probable cause, was a part. *See, e.g., United States v. Randall*, 947 F.2d 1314, 1319 (7th Cir. 1991) (finding probable cause existed to support an arrest when "the police department possessed a great deal of collective knowledge about [defendant's] involvement in the crimes ultimately charged at the time they effected his arrest.").

Finally, it is irrelevant that neither Sgt. Daly nor Detective Ruck effectuated the arrest. The same way that the knowledge establishing probable cause was imputed from Sgt. Daly to Detective

10

Ruck, it is imputed from Sgt. Daly to the officers who arrested Petitioner pursuant to the investigative alert. At the time of Petitioner's arrest, Detective Allen and the other arresting officers were assigned to the CPD gang tactical team. They objectively relied upon the investigative alert, as the law permits. *See Valencia*, 913 F.2d at 383 ("The police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. In that case, the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause."); *Nafzger*, 974 F.2d at 913 ("The law enforcement officer making the arrest or stop acts within the law so long as an objective interpretation of the flyer or bulletin would lead him or her to believe that the stop or arrest was permissible.").

Because Petitioner's Fourth Amendment claim was meritless, he cannot establish prejudice arising from appellate counsel's failure to contest the circuit court ruling on his motion to suppress.

## II. <u>Performance Prong</u>

Because Petitioner cannot demonstrate prejudice, his petition fails and the Court need not consider whether counsel's performance fell below an objective standard of reasonableness. Nevertheless, the Court quickly discusses it for purposes of completion. While there are no specific guidelines in determining whether counsel's performance fell below an objective standard of reasonableness, the Court considers whether counsel's assistance was "reasonable considering all the circumstances," including prevailing professional norms. *Strickland*, 466 U.S. at 688. Review of counsel's performance must be "highly deferential;" "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689-90. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted).

Counsel is not required to raise arguments it knows are groundless. "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) (finding failure of appellate counsel to pursue issue of whether probable cause supported arrest did not constitute ineffective assistance of counsel). Because Petitioner's Fourth Amendment argument was a losing one, his *Strickland* claim fails.

## CERTIFICATE OF APPEALABILITY AND NOTICE OF APPEAL RIGHTS

A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant makes such a "substantial showing" by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that, because of the adequacy of the issues presented, the petitioner deserves encouragement to appeal. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotations omitted). Because Petitioner cannot make such a substantial showing, the Court declines to issue a certificate of appealability.

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's

ruling to preserve his appellate rights. However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## CONCLUSION

For all the foregoing reasons, Petitioner's habeas corpus petition [1] is denied on the merits, and the Court declines to issue a certificate of appealability. The Clerk is directed to update the docket to reflect that the Respondent is Ryan Woods, Warden, Sheridan Correctional Center and alter the case caption to *Simmons v. Woods*. Judgment is entered in favor of Respondent and against Petitioner. All pending motions and deadlines are terminated as moot. Civil case terminated.

**DATED**: August 28, 2024     **ENTERED**:

                                                      /s/ LaShonda A. Hunt
                                                      LASHONDA A. HUNT
                                                      United States District Judge